No. 97-222

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 193

295 Mont. 363

983 P.2d 972

STEPHEN NELSON, individually and

as Personal Representative of the Estate of

Trina Falcon Nelson, deceased,

Plaintiff and Appellant,

v.

MARK DRISCOLL and BUTTE-SILVER

BOW COUNTY, a political subdivision

of the State of Montana,

Defendants and Respondents.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Butte-Silver Bow County,

The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Bernard J. "Ben" Everett, Knight, Dahood, McLean & Everett, Anaconda, Montana

For Respondent:

Brendon J. Rohan, Poore, Roth & Robinson, Butte, Montana

Submitted on Briefs: December 3, 1998

Decided: August 12, 1999

Filed:

_____

Clerk


Justice William E. Hunt, Sr. delivered the Opinion of the Court.

**¶1. Stephen Nelson (Stephen) brought this action in the Second Judicial District Court, Silver Bow County, against Police Officer Mark Driscoll (Officer Driscoll) and Butte-Silver Bow County (the County) (collectively the County) for the wrongful death and violation of the civil rights of Trina Falcon Nelson. The court granted summary judgment in favor of the County. Stephen appealed. We reverse and remand for further proceedings consistent with this opinion.**

**¶2. We restate the issues as follows:**

**¶3. 1. Did the District Court err in granting the County's motion for summary judgment on the ground that Officer Driscoll owed no legal duty to protect Trina?**

**¶4. 2. Did the District Court err in granting the County's motion for summary judgment on the ground that Stephen did not state an actionable 42 U.S.C. § 1983 claim under the state-created danger theory?**

### BACKGROUND

**¶5. This is the second appeal filed in this case concerning the tragic death of Trina Falcon Nelson (Trina). *See* Nelson v. Driscoll (1997), 285 Mont. 355, 948 P.2d 256 (hereinafter <u>Nelson I</u>). <u>Nelson I</u>, involving a procedural matter, provides only a brief**

summary of the facts giving rise to this case. The following paragraphs set forth a more detailed account of the facts so that we may thoroughly address the issues raised in this appeal. The facts are undisputed.

¶6. In the early morning hours of February 2, 1995, Trina and Stephen left a casino in Butte, Montana, and began driving home. While at the casino, between the hours of 6:30 p.m. and 1:30 a.m., Stephen and Trina had each consumed approximately fifteen alcoholic beverages. Stephen and Trina were regular casino customers, frequenting casinos two to four times per week. Stephen described Trina as a "problem drinker," noting that she would generally consume fifteen or sixteen drinks each time she visited a casino.

¶7. At approximately 1:43 a.m., Officer Driscoll observed Trina driving her vehicle in an erratic manner while turning west on Cobban Street from Massachusetts Avenue. Officer Driscoll observed that in executing her turn, Trina "seemed to cut the corner too sharp" on the icy road causing her vehicle to fishtail. He observed Trina correct her turn and continue west on Cobban. Noting the hour, the fact that the bars were closing, and Trina's erratic driving, Officer Driscoll decided to stop Trina.

¶8. After stopping Trina, Officer Driscoll noted that she had no trouble pulling over and parking her vehicle. Officer Driscoll approached Trina and asked whether she had been drinking. Trina told Officer Driscoll that she had consumed several drinks throughout the evening, had just left the Double Eagle Casino, and was on her way home. As Trina was talking, Officer Driscoll looked for signs which would indicate Trina's possible intoxication. Officer Driscoll noted that Trina was "communicating fine" with him and did not have slurred speech. He did not detect an odor of alcohol. In light of Trina's admission that she had been drinking, Officer Driscoll asked Trina to exit the vehicle and to accompany him to the sidewalk to conduct field sobriety testing. He asked Trina to remove her eyeglasses and attempted to conduct the horizontal gaze nystagmus (HGN) test. Trina told Officer Driscoll that she was "almost blind" and "couldn't see a thing" without her glasses. In later describing this incident, Officer Driscoll testified that Trina "could not or would not follow" his instructions regarding the HGN test. Officer Driscoll stated that he did not conduct the "one leg stand" or the "walk and turn" sobriety tests due to the icy conditions of the sidewalk. He stated that he himself almost fell while exiting his patrol car and, given that Trina's shoes appeared to have less traction than his vibram-soled shoes,

he thought it unsafe to conduct further sobriety testing.

¶9. Officer Driscoll walked to the passenger side of the vehicle and asked Stephen whether he too had been drinking. Stephen indicated that he had. When Officer Driscoll walked back to where Trina was standing, Stephen exited the vehicle "in somewhat of a belligerent manner." After several requests by Officer Driscoll to get back into the vehicle, Stephen finally obeyed.

¶10. Officer Driscoll testified that in assessing the situation, he did not believe he had sufficient probable cause to arrest Trina for driving under the influence of alcohol (DUI). Nevertheless, he thought there was a possibility that Trina might be impaired. Officer Driscoll informed Trina that although she did not appear to be intoxicated, he thought it unwise for either her or Stephen to drive home given the icy conditions and the fact that they had been drinking. He directed Trina to park her vehicle around the corner on a side street. Officer Driscoll told Trina that she and Stephen could either walk home or he would give them a ride. Trina and Stephen were more than two miles away from their home. Trina made a motion toward Harrison Avenue, a main thoroughfare of Butte, and asked if she could call a friend for a ride, to which Officer Driscoll responded that it was up to her. Trina told Officer Driscoll that she would call a friend. Officer Driscoll informed Trina that he would remain in the area to make sure neither she nor Stephen attempted to drive home. When asked whether he gave Trina and Stephen a warning about returning to their vehicle, Officer Driscoll answered:

I told them if they come back -- if they try to drive the vehicle again, we might have to, you know, go further, whatever that would be. It was more of a scare tactic than anything, I guess.

However, Officer Driscoll later testified that he did not think he had the lawful authority to prevent Trina and Stephen from driving their vehicle. He stated that, as far as he was concerned, Trina could have gotten into the vehicle and driven home.

¶11. Officer Driscoll waited for the couple to park their vehicle and watched them walk west on Cobban Street toward Harrison Avenue. Officer Driscoll circled once around the block and observed the couple standing at opposite sides of the parking lot of Taco John's restaurant. It appeared to Officer Driscoll that the two were

quarreling. Officer Driscoll circled around the block again and observed Stephen walking toward their vehicle. He did not see Trina. Once Stephen saw Officer Driscoll, he turned and began walking west on Cobban Street again. Moments later, Officer Driscoll observed Stephen walking toward the area of their vehicle and shined his spotlight on Stephen. Undeterred by the spotlight, Stephen continued walking toward the vehicle. Officer Driscoll circled around once more and observed Stephen sitting in the passenger seat of the vehicle. Again, Officer Driscoll shined his spotlight on Stephen and drove on. A few minutes later, Officer Driscoll observed Stephen walking south on Florence Avenue. The last time Officer Driscoll saw Trina was when she and Stephen were quarreling in the parking lot of Taco John's. Officer Driscoll was aware that a public telephone was located in front of Downey Drug, within a block and a half of Taco John's.

¶12. Two witnesses, driving northbound on Harrison Avenue, observed Trina wearing dark clothing and walking between the two southbound driving lanes of Harrison. The witnesses testified that Trina was not stumbling, and did not exhibit outward signs of intoxication. A third witness, driving in the left southbound driving lane of Harrison, observed Trina walking in or near the shoulder of the right southbound driving lane of Harrison. This witness also testified that Trina did not exhibit outward signs of intoxication.

¶13. Moments later, at approximately 2:15 a.m., Trina was struck and killed by a motorist later determined to have a blood alcohol content (BAC) of .24. The coroner's autopsy report indicated that Trina had a BAC of .25.

¶14. Stephen brought this action against Officer Driscoll and the County alleging negligence and a violation of Trina's constitutional rights pursuant to 42 U.S.C. § 1983. After discovery, the parties filed cross-motions for summary judgment. The parties agreed that there were no material facts in dispute, but each argued that the facts supported a different legal conclusion regarding liability.

¶15. In its January 15, 1997 order granting the County's motion for summary judgment, the District Court concluded that Officer Driscoll lacked probable cause to place Trina under arrest. The court further concluded that because Officer Driscoll lacked probable cause to arrest, no special relationship existed between Officer Driscoll and Trina which would give rise to a duty to protect her from harm. The court stated that without a duty, Stephen's negligence action failed.

¶16. The court further concluded that Trina and Stephen were not deprived of any rights afforded by the United States Constitution. Regarding Stephen's claim that Officer Driscoll seized Trina's vehicle in violation of the Fourth Amendment right to be free from unreasonable seizures, the court concluded that the right to drive a car is not a fundamental right, but a privilege that may be revoked. Regarding Stephen's claim that Officer Driscoll deprived Trina of her right to life guaranteed by the Fourteenth Amendment, the court cited to DeShaney v. Winnebago County Department of Social Services (1989), 489 U.S. 189, for the rule that the Fourteenth Amendment only limits the state's power to act; it does not require the state to guarantee a minimal level of safety or security. Pursuant to DeShaney, the court held that Stephen's 42 U.S.C. § 1983 claim was without merit.

¶17. On January 29, 1997, Stephen filed a motion and supporting brief for reconsideration of the court's summary judgment ruling. Stephen informed the court that during the pendency of this case, the Third Circuit Court of Appeals had formally recognized the "state-created danger theory" as a viable basis on which to assert a 42 U.S.C. § 1983 cause of action. *See* Kneipp v. Tedder (3rd Cir. 1996), 95 F.3d 1199. The state-created danger theory provides that a constitutional duty to protect may be imposed when state actors have affirmatively acted to create a plaintiff's danger, or to render a plaintiff more vulnerable to danger. Kneipp, 95 F.3d at 1207. Stephen argued that the state-created danger theory directly applied to the instant case and created triable issues of fact for the jury. The court did not agree. In denying Stephen's motion for reconsideration, the court stated that this case was distinguishable from Kneipp and that Officer Driscoll did not create any danger for which the County was liable. This appeal followed.

## STANDARD OF REVIEW

¶18. Our standard of review of appeals from summary judgment rulings is *de novo*. Motarie v. Northern Mont. Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In Bruner, we set forth our inquiry:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than

mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

Bruner, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted). On review, all reasonable inferences that might be drawn from the evidence are drawn in favor of the party opposing summary judgment. Motarie, 274 Mont. at 242-43, 907 P.2d at 156.

¶19. In this case, Stephen states that while the majority of facts are undisputed, one fact remains in dispute. He argues that the existence of probable cause to arrest Trina for DUI is a genuine issue of material fact precluding summary judgment. However, we have held that where facts are undisputed, the existence of probable cause to arrest is a question of law. Reece v. Pierce Flooring (1981), 194 Mont. 91, 96, 634 P.2d 640, 642-43. We have also held that the existence of a legal duty is a question of law. Gibby v. Noranda Minerals Corp. (1995), 273 Mont. 420, 424, 905 P.2d 126, 128. Likewise, we have held that where facts are undisputed, whether a special relationship exists is a question of law. Story v. City of Bozeman (1990), 242 Mont. 436, 451, 791 P.2d 767, 776. In light of these decisions, we determine that the question before us is whether the County was entitled to judgment as a matter of law.

## DISCUSSION

### *Issue 1*

¶20. Did the District Court err in granting the County's motion for summary judgment on the ground that Officer Driscoll owed no legal duty to protect Trina?

¶21. It is axiomatic that an action for negligence requires a legal duty. Kreig v. Massey (1989), 239 Mont. 469, 472, 781 P.2d 277, 278-79. Generally, a police officer has no duty to protect a particular individual absent a special relationship. Phillips v. City of Billings (1988), 233 Mont. 249, 253, 758 P.2d 772, 775; Annotation, *Drunk Drivers: Duty to Arrest*, 48 A.L.R. 4th 320 at § 2[a]. This rule is derived from the "public duty doctrine" which expresses the policy that a police officer's duty to protect and preserve the peace is owed to the public at large and not to individual

members of the public. Ezell v. Cockrell (Tenn. 1995), 902 S.W.2d 394, 397. Thus, it has been stated that "a duty owed to all is a duty owed to none." *See* Beal v. City of Seattle (Wash. 1998), 954 P.2d 237, 244. The public duty doctrine "serves the important purpose of preventing excessive court intervention into the governmental process by protecting the exercise of law enforcement discretion." Ezell, 902 S.W.2d at 400-01.

¶22. An exception to the public duty doctrine arises when there exists a special relationship between the police officer and an individual giving rise to special duty that is more particular than the duty owed to the public at large. Phillips, 233 Mont. at 253, 758 P.2d at 775; Ezell, 902 S.W.2d at 401. Generally, a special relationship arises in one of four circumstances.

A special relationship can be established (1) by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm; (2) when a government agent undertakes specific action to protect a person or property; (3) by governmental actions that reasonably induce detrimental reliance by a member of the public; and (4) under certain circumstances, when the agency has actual custody of the plaintiff or of a third person who causes harm to the plaintiff.

Day v. State (Utah 1999), 1999 WL 289122, at 3. *See generally*, 48 A.L.R. 4th §§ 3, 4, 6 and 8. *See e.g.*, Azure v. City of Billings (1979), 182 Mont. 234, 596 P.2d 460 (duty via statute and existence of custodial relationship); Graham v. MSU (1988), 235 Mont. 284, 767 P.2d 301 (duty via existence of custodial relationship); Jackson v. State (1998), 287 Mont. 473, 956 P.2d 35 (duty via government agency's voluntary undertaking to render services); Kaiser v. Town of Whitehall (1986), 221 Mont. 322, 718 P.2d 1341 (duty via governmental actions that reasonably induce detrimental reliance by a member of the public).

¶23. Stephen contends that the District Court erred in holding that no special relationship existed between Officer Driscoll and Trina which would give rise to a special duty to protect her. Without specifically addressing the existence of a special relationship, Stephen argues that Officer Driscoll owed Trina a duty to protect her because there existed probable cause to arrest her for DUI. As support for his argument, Stephen cites Phillips, 233 Mont. at 252, 758 P.2d at 775, for the proposition that a law enforcement officer's duty to protect arises once probable

cause to arrest exists. Further, Stephen argues:

Officer Driscoll contends he did not have probable cause to arrest Trina Falcon Nelson. Yet, under his authority as a police officer, he ordered Trina Falcon Nelson to park her vehicle and to not attempt to drive despite the dark and extreme weather conditions. Officer [Driscoll] cannot have it both ways. He cannot contend he lacked probable cause to arrest Trina Falcon Nelson for DUI but nonetheless had the right to deprive her of her vehicle at 2:00 a.m., in extreme weather conditions while she was more than two miles from her home.

We note that in his summary judgment brief to the District Court, Stephen argued:

[B]ecause Officer Driscoll indeed took control over Trina and her vehicle despite, as he contends, he had no probable cause to arrest, a special relationship of control over Trina Falcon Nelson was created. That relationship of control created the duty to protect. Kreig v. Massey (1989), Mont. , 781 P.2d 277, 278-79.

Also in his summary judgment brief, Stephen argued that even if a party has no duty to perform an act, if the party voluntarily undertakes to perform the act, he or she must exercise reasonable care in doing so. Stewart v. Standard Publishing Co. (1936), 102 Mont. 43, 50, 55 P.2d 694, 696.

**¶24. At first glance, Stephen's argument is confusing. Although not explicit, it appears that Stephen is arguing that Officer Driscoll's special duty to Trina arose in this case because there existed probable cause to arrest her for DUI, or, in the alternative, because Officer Driscoll affirmatively acted to prevent Trina from driving and to ensure her safety in reaching her home. After researching and reviewing the pertinent case law in Montana, as well as the law in other jurisdictions, it appears to this Court that Stephen has combined three separate bases on which to assert that Officer Driscoll owed a duty to protect Trina. Stephen's argument weaves three important but distinct duties which have been determined by courts to fall within the special relationship exception to the public duty doctrine: (1) a police officer's special duty to protect third persons from one who is in the custody or control of the police officer; (2) a police officer's special duty to protect a person who is in the custody or control of the police officer; and (3) a police officer's special duty**

to protect an individual for whom the police officer has voluntarily undertaken to provide some service. *See generally*, 48 A.L.R.4th at §§ 3, 4, 6 and 8; Stuart M. Speiser et al., The American Law of Torts § 4:11 at 608, 616 and § 9:23 at 1142-44 (1985); Restatement (Second) of Torts §§ 314A(4), 319, 320, 323, 324. For ease in deciding the issue raised, we will discuss separately the application of these special duties to this case.

### A. Police officer's duty to protect third persons

### from one who is in his or her custody or control

¶25. In <u>Phillips</u>, this Court confronted the issue of whether police officers owed a special duty to Phillips to protect him from the dangerous actions of an intoxicated driver who collided with Phillips only two hours after having been detained and questioned by police officers concerning an unrelated incident. During this detainment and questioning, police officers noticed beer cans in the driver's vehicle and smelled alcohol on his breath. However, the officers reported that the driver was polite and cooperative, and did not appear to be in a state of extreme intoxication. Believing that probable cause was absent, the police officers did not arrest the driver for DUI. <u>Phillips</u>, 233 Mont. at 250-51, 758 P.2d at 773-74.

¶26. Phillips brought an action for negligence against the City of Billings alleging that the police officers owed him a duty to control the potentially dangerous actions of the driver. As support for his allegation, Phillips cited § 319 of the Restatement (Second) of Torts (hereinafter § 319) which provides:

One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

We rejected Phillips' argument, stating that "imposition of a duty under § 319 depends on the ability to control the third person." We added, "absent probable cause, no duty existed." <u>Phillips</u>, 233 Mont. at 252, 758 P.2d at 774-75.

¶27. Stephen interprets <u>Phillips</u> as setting forth the rule that if probable cause exists, there is a duty to protect. He arrives at this rule by extracting the above phrase, "absent probable cause, no duty existed" and stating it in the converse. We note that the District Court interpreted <u>Phillips</u> the same way. In its order granting summary judgment, the court cited <u>Phillips</u> for the proposition that "once probable cause is established, the ability to control under [§ 319] is established and a greater duty may be imposed by a special relationship." In applying what he claims to be the <u>Phillips</u> rule to the instant case, Stephen argues that probable cause existed to arrest Trina for DUI and, therefore, Officer Driscoll owed a duty to protect her from danger. We reject Stephen's argument for several reasons.

¶28. First, we do not agree with Stephen's interpretation of <u>Phillips</u>. If any rule can be gleaned from <u>Phillips</u>, it is that imposition of a duty to protect under § 319 depends on whether the police officer *takes charge of* the alleged dangerous person. *See* § 319 Restatement (Second) of Torts ("One who takes charge of . . . ."). *In charge of* is defined as "in the care or custody of." Black's Law Dictionary 685 (5th ed. 1979). The term *custody* is defined as "immediate charge and control . . . actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession." Black's Law Dictionary at 347. Applying the plain and ordinary meaning of the words *takes charge of*, as we must, *see* Werre v. David (1996), 275 Mont. 376, 385-86, 913 P.2d 625, 631, we determine that the special duty described in § 319 arises not when probable cause exists, as Stephen suggests, but when the police officer takes a person into custody, or exerts some legal or physical restraint on his or her liberty. Although the Court's statement "absent probable cause, no duty existed" was technically correct, a more accurate statement of the law is "absent a custodial relationship, no duty existed."

¶29. Our rejection of Stephen's argument is further buttressed by the fact that Montana law does not impose on police officers an absolute duty to arrest once probable cause exists. Rather, a police officer's authorization to arrest is permissive. Section 46-6-311, MCA, states:

[A] peace officer *may* arrest a person when a warrant has not been issued if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing circumstances require immediate arrest. (Emphasis added.)

Courts in other jurisdictions have held that "liability [can] not be predicated on a peace officer's failure to restrain a drunk driver, where, since the officer had discretion to enforce drunk driving laws in the manner he deemed appropriate in the circumstances, he had no absolute, certain, or imperative duty to anyone in that regard." *See* 48 A.L.R. 4th at 334, § 5 (citations omitted). Thus, even if there exists probable cause to arrest, an officer is under no duty to arrest and, therefore, no § 319 duty to protect arises simply by a determination of probable cause. A § 319 duty to protect arises only when a police officer actually makes an arrest, or otherwise takes possession or custody of an individual.

**¶30. Finally, aside from Stephen's erroneous interpretation of <u>Phillips</u>, we believe that Stephen's reliance on <u>Phillips</u> is misplaced. Under § 319, a police officer's duty to protect is owed to *third persons*, not to the person with whom the officer has a custodial relationship. In <u>Phillips</u>, the plaintiff argued, though unsuccessfully, that under § 319 the police officer owed a duty to protect him, a third person, from the dangerous actions of the intoxicated driver. That is not the case here. Rather, Stephen argues the opposite. He argues that Officer Driscoll owed a duty to protect Trina from the dangerous actions of third persons. Under these circumstances, we determine that <u>Phillips</u> is distinguishable from and inapplicable to the instant case.**

**¶31. We need not reach Stephen's argument that probable cause existed to arrest Trina for DUI because, as discussed above, probable cause is not the determining factor for imposition of a special duty under § 319. For this reason, and upon the foregoing, Stephen's argument that Officer Driscoll owed a special duty to protect Trina because there existed probable cause to arrest her for DUI is without merit.**

B. Police officer's duty to protect

a person in his custody or control

**¶32. In his brief to the District Court, Stephen cited <u>Kreig</u> as support for his argument that Officer Driscoll owed a special duty to protect Trina. In <u>Kreig</u>, the plaintiff brought a wrongful death action against the decedent's landlord claiming that the landlord was negligent in failing to prevent the decedent's suicide. While walking past decedent's open apartment door, the landlord observed the decedent holding a pistol and threatening suicide. The landlord managed to take the gun from**

the decedent and, thinking the decedent to have calmed down, placed the gun on top of the closet in decedent's room and left. Decedent thereafter shot and killed himself. Kreig, 239 Mont. at 470-71, 781 P.2d at 278.

¶33. In ruling on the issue of the landlord's negligence, we noted the general rule that negligence actions for the suicide of another will not lie because the suicide is considered a superseding, intervening act. We also noted an exception to this rule. The exception imposes a duty to prevent suicide when a custodial relationship exists and the suicide is foreseeable. We ultimately held that the landlord was not liable for the decedent's death because there was no custodial relationship between the two. Kreig, 239 Mont. at 472-73, 781 P.2d at 279. We impliedly held that a landlord-tenant relationship is not custodial by nature. Kreig, 239 Mont. at 473, 781 P.2d at 279.

¶34. Stephen maintains that the facts of this case mandate the opposite result from that reached in Kreig. He argues that here, a custodial relationship was created when Officer Driscoll directed Trina to park her car and instructed her that either she could walk home or he would give her a ride home. We disagree.

¶35. As discussed in the preceding section, the terms *custody* and *custodial relationship* contemplate a degree of control akin to possession, or a degree of control which results in a physical or legal restraint on one's liberty. Examples of relationships which are custodial in nature include the following: school-minor pupil, parent-child, jailer-inmate, carrier-passenger, innkeeper-guest, and hospital-patient. *See* Graham v. MSU (1988), 235 Mont. 284, 288-89, 767 P.2d 301, 303-04 (school-minor pupil); Azure v. City of Billings (1979), 182 Mont. 234, 242-43, 596 P.2d 460, 465 (jailer-inmate). *See generally* Speiser, supra § 4:11 at 602; Prosser and Keeton, supra § 56 at 376-77; Restatement (Second) of Torts § 314A(4) at 120-21, § 320 at 130. Here, the facts do not establish that Officer Driscoll exerted the requisite degree of control over Trina sufficient to create a custodial relationship. Although Officer Driscoll directed Trina to park her vehicle and instructed her not to drive, his actions do not amount to possession of her, or a physical or legal restraint of her liberty. The right to drive a car is not a fundamental right, but a privilege that may be revoked. State v. Skurdal (1988), 235 Mont. 291, 295, 767 P.2d 304, 307. Once Trina parked her vehicle, she was free to go and then do as she pleased. On this basis, we conclude that no custodial relationship existed between Officer Driscoll and Trina giving rise to a special duty to protect her from harm.

## C. Police officer's duty to protect an individual

for whom he or she has voluntarily undertaken to

provide some service

**¶36. In his brief to the District Court, Stephen relied upon Stewart v. Standard Publishing Co. (1936), 102 Mont. 43, 55 P.2d 694, as support for his argument that Officer Driscoll owed Trina a special duty to protect her because he took affirmative steps to prevent Trina from driving and to ensure her safety in reaching her home. In** <u>Stewart</u>**, the plaintiff brought a negligence action to recover damages for injuries she sustained after falling on the icy sidewalk abutting the defendant's place of business. The plaintiff conceded that the city had the initial duty to maintain the sidewalk, but alleged the defendant assumed this duty when it undertook to remove the ice and snow from the sidewalk. We agreed. We applied the established rule that:**

[W]here a person undertakes to do an act or discharge a duty by which the conduct of another may be properly regulated and governed, he is bound to perform it in such a manner that those who are rightfully led to a course of conduct or action on the faith that the act or duty will be properly performed shall not suffer loss or injury by reason of negligent failure so to perform it.

<u>Stewart</u><u>, 102 Mont. at 50, 55 P.2d at 696.</u>

**¶37. The above rule echos the long-standing principle of tort law that "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." Speiser,** <u>supra</u>**, § 9:22 at 1140.** *See also* **Restatement (Second) of Torts § 323. The rule has been applied in several Montana cases where this Court has imposed a duty of reasonable care in the performance of an undertaking.** *See* **Jackson v. State (1998), 287 Mont. 473, 490, 956 P.2d 35, 46 (holding that adoption agency assumed a duty to refrain from making negligent misrepresentations when it began volunteering information to potential adoptive parents); Kopischke v. First Continental Corp. (1980), 187 Mont. 471, 481-82, 610 P.2d 668, 673-74 (holding that retail dealer who undertook to repair and recondition**

a used truck for resale owed a duty to the public to use reasonable care in the making of tests for the purpose of detecting defects and in the making of repairs necessary to render the truck reasonably safe for use upon the public highways); Sult v. Scandrett (1947), 119 Mont. 570, 573-77, 178 P.2d 405, 406-07 (holding that seller of cattle assumed a duty to either continue its weighing service, or give reasonable notice of its discontinuance, when he undertook the performance of the weighing service); Vesel v. Jardine Mining Co. (1939), 110 Mont. 82, 92, 100 P.2d 75, 80 (holding that employer who gratuitously assumed to render medical services to injured employee, though no duty to do so was imposed by statute or contract, was bound to exercise reasonable care in performance of such services).

¶38. Stephen contends that the rule in Stewart applies to the instant case. He argues that while Officer Driscoll may not have initially owed Trina a duty to protect her from harm, Officer Driscoll assumed this duty when he prevented Trina from driving her vehicle and kept a close eye on her from his car to ensure that she did not attempt to drive. We agree. The uncontroverted facts show that Officer Driscoll knew Trina had been drinking and thought there was a possibility she might be impaired. He thought it unwise for Trina to drive home given the icy conditions and her possible impairment. He directed Trina to park her vehicle and told her that she and Stephen could either walk home or he would give them a ride. After Trina indicated she would call a friend for a ride, Officer Driscoll circled the block three times to ensure that Trina did not drive home. We conclude, as a matter of law, that by taking these affirmative steps to ensure Trina's safety, Officer Driscoll assumed a duty to protect Trina from harm.

¶39. Although we agree with the application of Stewart to this case, an analysis concerning legal duty is incomplete without a discussion of foreseeability. *See* Busta v. Columbus Hosp. Corp. (1996), 276 Mont. 342, 916 P.2d 122. In Busta, we held that "absent foreseeability, there is no duty . . . ." Busta, 276 Mont. at 363, 916 P.2d at 134 (citation omitted). We conclude that the foreseeability component of duty does not weigh against the existence of a duty in this case. Given the fact that Trina had been drinking, was headed for a busy street, and was alone, coupled with the icy conditions, the frigid temperature, and the darkness, any negligent exercise of Officer Driscoll's actions in ensuring Trina's safety involved a foreseeable risk of harm to Trina.

¶40. Having concluded, as a matter of law, that Officer Driscoll assumed a duty to

protect Trina from harm, the question now becomes whether Officer Driscoll breached that duty, or in other words, whether Officer Driscoll failed to exercise reasonable care in his undertaking. Ordinarily, breach of a legal duty to exercise reasonable care is a question of fact for the jury. Smith v. Kerns (1997), 281 Mont. 114, 117, 931 P.2d 717, 719. Thus, summary disposition of this case is improper. We hold that the District Court erred in granting the County's summary judgment motion on Stephen's negligence claim.

*Issue 2*

¶41. **Did the District Court err in granting the County's motion for summary judgment on the ground that Stephen did not state an actionable 42 U.S.C. § 1983 claim under the state-created danger theory?**

¶42. **A government official who, while acting under color of state law, deprives an individual of constitutionally protected rights may be subject to personal liability for civil damages pursuant to 42 U.S.C. § 1983 (hereinafter § 1983). Dorwart v. Caraway, 1998 MT 191, ¶ 114, 290 Mont. 196, ¶ 114, 966 P.2d 1121, ¶ 114. The Fifth and Fourteenth Amendments to the United States Constitution and Article II, Section 17 of the Montana Constitution, prohibit a government entity from depriving persons of life, liberty, or property without due process of law. Mysse v. Martens (1996), 279 Mont. 253, 260, 926 P.2d 765, 769. In this case, the parties do not dispute that Officer Driscoll was a government official acting under color of state law when he detained and questioned Trina. Likewise, the parties do not dispute that Trina's right to life is a constitutionally protected right. The parties dispute only whether Officer Driscoll deprived Trina of her life without due process of law.**

¶43. **Generally, a government official's failure to protect an individual from harm does not constitute a violation of the due process clause. DeShaney v. Winnebago County Dep't of Social Services (1989), 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249. The underlying rationale for this rule is that the due process clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." DeShaney, 489 U.S. at 195. Thus, inaction by the state, even where a danger is known, is insufficient to trigger a due process clause obligation. DeShaney, 489 U.S. at 200.**

¶44. **However, courts have recognized an exception to this general rule pursuant to**

the "state-created danger theory." *See e.g.,* **Kallstrom v. City of Columbus (6th Cir. 1998), 136 F.3d 1055; Kneipp v. Tedder (3rd Cir. 1996), 95 F.3d 1199; Graham v. Independent School District No. I-89 (10th Cir. 1994), 22 F.3d 991; Reed v. Gardner (7th Cir. 1993), 986 F.2d 1122; Dorothy J. v. Little Rock School District (8th Cir. 1993), 7 F.3d 729; Cornelius v. Town of Highland Lake (11th Cir. 1989), 880 F.2d 348; Wood v. Ostrander (9th Cir. 1989), 879 F.2d 583. The state-created danger exception was derived from the following excerpt from DeShaney:**

While the State may have been aware of the dangers that [the victim] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them . . . . [T]he State . . . placed him in no worse position than that in which he would have been had it not acted at all . . . .

Huffman v. County of Los Angeles (9th Cir. 1998), 147 F.3d 1054, 1059 (quoting DeShaney, 489 U.S. at 201); Kneipp, 95 F.3d at 1205.

**¶45. The state-created danger exception provides that a constitutional duty to protect may be imposed when state actors have affirmatively acted to create plaintiff's danger, or to render him or her more vulnerable to it. Kneipp, 95 F.3d at 1207; Wood, 879 F.2d at 589-90. While the state-created danger theory is recognized by most jurisdictions, the test used by courts in applying it slightly varies among jurisdictions. *Cf*. Kneipp, 95 F.3d at 1208, *with* Huffman, 147 F.3d at 1061. The Ninth Circuit Court of Appeals has articulated the following test for application of the state-created danger theory:**

[T]he danger creation plaintiff must demonstrate, at the very least, that the state acted affirmatively, and with deliberate indifference, in creating a foreseeable danger to the plaintiff, leading to the deprivation of the plaintiff's constitutional rights.

Huffman, 147 F.3d at 1061 (citations omitted).

**¶46. Stephen contends that the state-created danger theory directly applies to the instant case and creates triable issues of fact for the jury, making summary judgment improper. As support for his contention, he cites Kneipp, wherein the Third Circuit Court of Appeals sustained a § 1983 claim, pursuant to the state-created danger**

theory, under facts similar to those presented in this case. <u>Kneipp</u>, 95 F.3d at 1211.

¶47. In <u>Kneipp</u>, a husband and wife were returning home on foot after a night of drinking at a local tavern in Philadelphia. It was a cold January evening. The wife was visibly intoxicated and required her husband's assistance in reaching their home. Shortly after midnight, the couple began quarreling and a police officer stopped the couple for causing a disturbance. At this point, the couple was only one-third of a block from their home. The officer questioned the husband and wife separately and found each to be intoxicated. While questioning the wife, the officer smelled alcohol on her breath and noted that she was leaning on his patrol car, unable to stand by herself. Meanwhile, three other police officers arrived at the scene. The husband went to these officers and asked whether he could go home, as he and his wife had employed a babysitter and were supposed to be home. The officers told him he could go. When the husband left to go home, his wife was still being questioned by the police officers. The husband assumed that the police officers would take his wife to either the police station house or the hospital. However, the police officer questioning the wife sent her home alone. The wife never reached her home. She was found unconscious at the bottom of an embankment next to a parking lot across the street from the couple's home. <u>Kneipp</u>, 95 F.3d at 1201-03.

¶48. The wife's legal guardians brought a § 1983 action against the City of Philadelphia and several police officers pursuant to the state-created danger theory. The plaintiffs alleged that the officers were aware of the wife's intoxication and the risk of harm she faced due to her impairment; that the officers assumed responsibility for her protection when they told the husband he could leave; and that by later abandoning the wife, the officers affirmatively created a danger and increased the risk that the wife would be harmed. The plaintiffs further alleged that the officers' conduct made the wife more vulnerable by interfering with her husband's efforts to guide her safely home. Finally, the plaintiffs alleged that because the officers acted with deliberate indifference, the wife was deprived of her constitutional liberty interest in personal security without due process of law. The district court found that the plaintiffs had failed to prove a constitutional violation under the danger creation exception and granted the defendants' summary judgment motion. <u>Kneipp</u>, 95 F.3d at 1203-04.

¶49. On appeal, the Third Circuit Court of Appeals observed that the cases from other circuits which had recognized the state-created danger theory as a basis for

recovery under § 1983 had four elements in common:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) the state actor acted in willful disregard for the safety of the plaintiff;

(3) there existed some relationship between the state and the plaintiff;

(4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

Kneipp, 95 F.3d at 1208. The court then applied this four-part test to the facts and determined that the plaintiffs had adduced sufficient evidence to raise a material issue of fact with respect to each element. Kneipp, 95 F.3d at 1208-09. The court formally recognized the state-created danger theory as a viable basis for imposing constitutional liability under § 1983, and held that application of the theory to the facts of that case created a triable issue of fact making summary judgment improper. Kneipp, 95 F.3d at 1211.

¶50. Our research reveals another case, with facts similar to those presented here, in which the Ninth Circuit Court of Appeals held that a triable issue of fact existed as to whether the state actor affirmatively acted to create or increase a plaintiff's danger thereby triggering a due process duty of protection. In Wood v. Ostrander (9th Cir. 1989), 879 F.2d 583, police officers arrested a drunk driver and impounded his car, leaving the driver's female passenger stranded in a high-crime area at 2:30 a.m. The woman was later raped after accepting a ride home from a stranger. The woman thereafter brought a § 1983 action against the police officer. The district court granted summary judgment for the police officer on the ground that he owed no constitutional duty of protection and was entitled to good faith qualified immunity. Wood, 879 F.2d at 586. In reversing the district court, the Ninth Circuit Court of Appeals held that the plaintiff had raised triable issues of fact regarding the police officer's knowledge of danger, and whether the police officer affirmatively and with deliberate indifference placed the plaintiff in danger. Wood, 879 F.2d at 589-90. *See also* White v. Rochford (7th Cir. 1979), 592 F.2d 381(reversing order of dismissal and holding that plaintiffs, on behalf of three minor children, stated an actionable § 1983 claim where a police officer pulled over the children's uncle with whom the children were riding, arrested him for drag racing, and left the children stranded in the car on the side of a busy highway).

¶51. Stephen claims that, as in <u>Kneipp</u>, application of the state-created danger theory to the facts of the instant case creates a triable issue of fact as to whether Officer Driscoll affirmatively placed Trina in danger, or affirmatively increased her vulnerability to danger, thereby triggering a due process duty of protection. He urges this Court to formally recognize the state-created danger theory as a viable basis on which to assert constitutional liability under § 1983, apply the <u>Kneipp</u> test, and hold that, as applied to this case, the state-created danger theory creates triable issues of fact making summary judgment improper.

¶52. Our research concerning the state-created danger theory reveals that it is widely accepted by most jurisdictions as a viable basis on which to assert a § 1983 claim. In light of this weight of authority, and believing the state-created danger theory to be grounded in sound legal reasoning, we adopt the state-created danger theory as a viable basis on which to assert a § 1983 claim. With respect to the proper test to apply in determining the applicability of the state-created danger theory, we conclude that the <u>Huffman</u> test, as set forth by the Ninth Circuit Court of Appeals, is most appropriate. Therefore, we hold that to state an actionable § 1983 claim pursuant to the state-created danger theory, the plaintiff must demonstrate that: (1) the state acted affirmatively, (2) with deliberate indifference, (3) in creating a foreseeable danger to the plaintiff, (4) leading to the deprivation of the plaintiff's constitutional rights. *See* <u>Huffman</u>, 147 F.3d at 1061.

¶53. Applying the <u>Huffman</u> test to the facts of this case, we believe Stephen has presented sufficient evidence to raise a material issue of fact concerning each element of the test. A triable issue of fact exists as to whether Officer Driscoll acted affirmatively when, after determining absence of probable cause, he directed Trina to park her vehicle, instructed her to either walk home or accept a ride from him, and then circled the block three times to make sure she did not attempt to drive. Likewise, a triable issue of fact exists regarding Officer Driscoll's knowledge of the danger that Trina faced. Officer Driscoll thought Trina was impaired. He knew it was a dark, frigid evening, knew the roads were icy, knew Trina was headed for a street with heavy traffic, and knew she was walking alone. A triable issue of fact exists regarding whether Officer Driscoll acted with deliberate indifference in creating a danger, or making Trina more vulnerable to a danger. Finally, a triable issue of fact exists as to whether Officer Driscoll's actions led to the deprivation of Trina's right to life.

**¶54. In sum, Stephen has stated an actionable § 1983 claim under the state-created danger theory. Pursuant to the <u>Huffman</u> test, and in light of the <u>Kneipp</u> and <u>Wood</u> decisions, we determine that Stephen has adduced sufficient evidence to raise genuine issues of material fact as to whether Officer Driscoll affirmatively and with deliberate indifference placed Trina in danger, or increased her vulnerability to danger, thereby triggering a due process duty of protection. We hold that the District Court erred in granting the County's motion for summary judgment on Stephen's federal § 1983 claim.**

**¶55. Reversed and Remanded for further proceedings consistent with this opinion.**

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART