JUSTICE LEAPHART,
concurring in part and dissenting in part. ¶53 I concur with the Court’s resolution of Issue One and dissent as to Issue Two.
¶54 At the District Court and here, the State argued that if it was not entitled to quasi-judicial immunity, it should be entitled to summary judgment because the State owed no duty of care to Jack Nelson, either pursuant to statute or common law, on the premise that the medical licensing statutes are for the benefit of the general public and do not create a special duty to an individual to protect from or insure against the negligent actions of a third party.
¶55 Whether a legal duty exists can be determined as a matter of law. Eklund, ¶ 32. In a negligence action, a duty may arise from a statutorily imposed obligation. Eklund, ¶ 38; Prindel v. Ravalli County, 2006 MT 62, ¶ 29, 331 Mont. 338, ¶ 29, 133 P.3d 165, ¶ 29; Massee, ¶ 43; Jackson v. State, 1998 MT 46, ¶ 62, 287 Mont. 473, ¶ 62, 956 P.2d 35, ¶ 62. It is necessary to consider the public duty doctrine *222 when considering negligence claims against a public entity or person. Massee, ¶ 41. Under the public duty doctrine, “a governmental entity cannot be held liable for an individual plaintiffs injury resulting from a governmental officer’s breach of a duty owed to the general public rather than to the individual plaintiff.” Massee, ¶ 41. An exception to the public duty doctrine exists when there is a special relationship between the governmental entity and the plaintiff giving rise to a special duty that is “more particular than the duty owed to the public at large.” Eklund, ¶ 34 (citing Nelson v. Driscoll, 1999 MT 193, ¶ 22, 295 Mont. 363, ¶ 22, 983 P.2d 972, ¶ 22); see also Orr v. State, 2004 MT 354, ¶ 41, 324 Mont. 391, ¶ 41, 106 P.3d 100, ¶ 41. A special relationship can be established in one of four circumstances:
(1) by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm; (2) when a government agent undertakes specific action to protect a person or property; (3) by governmental actions that reasonably induce detrimental reliance by a member of the public; and (4) under certain circumstances, when the agency has actual custody of the plaintiff or of a third person who causes harm to the plaintiff.
Nelson, ¶ 22. At issue in this case is whether an exception to the public duty doctrine exists by way of a statute establishing a special relationship.
¶56 In the recent Eklund case, the plaintiff filed suit against Wheatland County and the Wheatland County Sheriff after he was hit and injured by a vehicle being driven by another defendant, Roy Trost. Eklund, ¶¶ 17-18. Trost had escaped from a youth detention center and was driving a stolen vehicle. Eklund, ¶¶ 10-12. Law enforcement officers pursued him at a high rate of speed, even as they entered town. Eklund, ¶ 15. Trost lost control of the vehicle and struck Eklund. Eklund, ¶ 17. Wheatland County and the Sheriff argued that under the public duty doctrine they had no duty to Eklund. Eklund, ¶ 35. In determining whether the public duty doctrine applied, this Court addressed the first circumstance under which the exception to the doctrine is established-whether a special relationship was created by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm. Eklund, ¶ 35.
¶57 The statute at issue was § 61-8-107, MCA, regarding police vehicles, which provided in pertinent part:
(2) The driver of a police vehicle or authorized emergency vehicle may:
*223 (b) proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;
(c) exceed the speed limits so long as he does not endanger life or property;
(4) The foregoing provisions shall not relieve the driver of a police vehicle ... from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
Eklund, ¶ 36 (emphasis in original). Even though the statute uses general terms, “all persons” and “others,” we concluded that the statute imposed a duty on drivers of emergency vehicles and created “a special class of persons-those, who by use of the streets and highways are potential victims of a high speed chase-to whom the duty is owed.” Eklund, ¶ 39. Accordingly, a special relationship was established and the public duty doctrine did not apply. Eklund, ¶ 39.
¶58 In this case, we concluded in Issue One that the medical licensing statutes indeed impose a duty on the State to properly investigate an applicant and refrain from licensing an applicant who has committed unprofessional conduct. The question then, in determining whether the special relationship exception to the public duty doctrine applies, is whether the statutes create a special class of persons to whom the duty is owed. Section 37-3-101, MCA, provides:
Purpose. It is hereby declared, as a matter of legislative policy in the state of Montana, that the practice of medicine within the state of Montana is a privilege granted by the legislative authority and is not a natural right of individuals and that it is deemed necessary, as a matter of such policy and in the interests of the health, happiness, safety, and welfare of the people of Montana, to provide laws and provisions covering the granting of that privilege and its subsequent use, control, and regulation to the end that the public shall be properly protected against unprofessional, improper, unauthorized, and unqualified practice of medicine and to license competent physicians to practice medicine and thereby provide for the health needs of the people of Montana. [Emphasis added.]
¶59 Despite the Court’s protestations to the contrary, this statute lends itself to the same analysis as the high speed chase statute involved in Eklund-th&t is, although the statute uses general terms, “people of Montana” and “public,” it creates a special class of persons *224 to whom the duty is owed. Since a licensed doctor does not, in fact, treat the entirety of the Montana population, this class consists of the doctor’s patients who, by seeking care for their health needs from a licensed physician, are potential victims of unprofessional, improper, unauthorized, or unqualified practice of medicine. The Eklund class of potential victims using a particular street that is the scene of a high-speed chase is no different analytically from potential victims who seek health care from a particular doctor licensed by the State. Both classes, although less than the public at large, are the intended beneficiaries of the respective statutes. The patient as a potential victim presents an even more compelling argument than the random bystander to a police chase given that the patient, in reliance on the State’s licensing process, has chosen this licensed doctor to attend to his or her health needs. Jack Nelson was a member of this special class of persons created by § 37-3-101, MCA. The State owed a duty to Jack, not to insure against specific instances of malpractice, but to investigate applicants and license only qualified, competent physicians from whom he might seek care for his health needs.
¶60 The State is concerned that if it is found to have a duty to individual patients, it would become liable for every act of negligence committed by licensed physicians. The State argues the public interest would not be served by creating a duty by which a licensing board is responsible to control the conduct of its licensees. This concern arises out of the State’s mischaracterization of its duty. The State’s duty is not to anticipate every interaction between a doctor and patient. Rather, the State’s duty is preliminary. It occurs before a doctor ever has an opportunity to interact with a patient. That is, the State has a duty to license only qualified doctors; a duty to screen applicants who have engaged in unprofessional conduct and to require that they proceed through a contested case proceeding. Sections 37-1-305, 37-3-321, MCA. Likewise, the State’s duty is not to control the conduct of its licensees at the risk of being liable for licensees’ negligent acts. Its duty is to license only applicants who meet the statutory qualifications-a matter within the State’s control. If the State fails to carry out that duty, it may be liable for its own negligence as opposed to the negligence of the licensee. If the State complies with the statutory requirements for licensing, it is not exposed to any liability for having issued the license.
¶61 Having determined that the State owed a statutory duty to Jack Nelson, it is unnecessary to determine whether a common law duty existed. Orr, ¶ 48. Further, a discussion of foreseeability, necessary in *225 an analysis of common law duty, is not warranted. When the legislature enacted statutes to protect a special class-patients seeking medical care-it foresaw the harm to patients that could occur if the State failed to follow the statutes for licensing a physician.
¶62 The State farther argues that the Board’s statutory duty in granting or denying medical licenses nans to the applicant, not the patient, to ensure an applicant’s due process rights are not violated. The State claims that this duty arises from the physician’s property interest in the license. This contention is contradicted by the licensing statutes. Section 37-3-321, MCA, provides the procedures that are to be undertaken when a license is denied, giving rise to a contested case under MAPA. However, as stated in § 37-3-101, MCA, the purpose in denying the license of an unqualified applicant in the first place is to protect patients from unqualified, unprofessional physicians. Further, § 37-3-101, MCA, provides that the practice of medicine is a privilege and not a natural right.
¶63 I dissent. An exception to the public duty doctrine exists because there was a special relationship between Jack Nelson and the Board by virtue of § 37-3-101, MCA, which requires that the Board protect patients by investigating applicants and licensing only qualified physicians.
JUSTICE COTTER joins the dissent of JUSTICE LEAPHART.