JUSTICE NELSON,
concurring in part and dissenting in part.
¶64 I join the Court’s decision as to Issue 1, but I note my continued disagreement with the doctrine of quasi-judicial immunity. See Rahrer v. Board of Psychologists, 2000 MT 9, ¶¶ 28-44, 298 Mont. 28, ¶¶ 28-44, 993 P.2d 680, ¶¶ 28-44 (Nelson & Trieweiler, JJ., specially concurring).
¶65 I dissent from the Court’s decision as to Issue 2. Since the medical licensing statutes protect everybody, they protect nobody. That, in a nutshell, is the application of the public duty doctrine to the facts of this case. There is probably no more byzantine, pernicious, or illogical a doctrine in the law than the public duty doctrine. The public duty doctrine does not depend for its existence on any statute enacted by the peoples’ representatives in the Legislature. It is not grounded in Montana’s Constitution; in fact, Article II, Section 18 prohibits it. It has been rejected in numerous States as a throwback to a feudal time when it was thought that the King could do no wrong.
¶66 Here, the State of Montana, acting through the Board of Medical Examiners, licensed Dr. Thomas Stephenson to practice medicine in this State. This doctor’s track record includes license revocation and suspension, practice restrictions, probation, discipline for *226 unprofessional conduct, false advertising, fraudulent insurance claims, repeated negligence in treating patients, gross negligence in treating patients, numerous malpractice suits, dishonesty and corruption in treating patients, conduct warranting the denial of his license, signing medical documents containing false facts, improperly subscribing and maintaining medical records, bankruptcy, alcohol abuse, and Demerol addiction. See Opinion, ¶ 5. Yet, this Court invokes the public duty doctrine and holds that since the laws governing the regulation of the practice of medicine contained in Title 37, Chapter 3, MCA, protect “all the people of Montana,” Opinion, ¶ 49, they do not, therefore, protect any of the people of Montana from the likes of Dr. Stephenson. In short, a duty to all is a duty to none. Opinion, ¶¶ 35, 50.
¶67 The Court’s position is untenable. The Legislature enacted the medical licensing laws to protect innocent, unsuspecting, sick Montanans like Jack Nelson from physicians like Dr. Stephenson. The Legislature enacted these laws to prevent the harm that foreseeably would occur if physicians like Dr. Stephenson were allowed to practice medicine in Montana. Section 37-3-101, MCA. While the Board may not have a duty to anticipate or prevent malpractice or misconduct committed by a properly licensed physician against his or her patient, the Board does have a statutory duty to license only properly credentialed, ethical, and qualified physicians in the first place. Section 37-3-101, MCA. Under the various provisions of Title 37, Chapter 3, Part 3, MCA, the Board has a clear duty to screen applicants who have engaged in unprofessional conduct, fraud, gross negligence, dishonesty, and corruption and require them to proceed through a contested case hearing. In short, the Board has a statutory duty to do what is -uniquely within its power to do-to make sure that a physician with a track record like Dr. Stephenson’s is not licensed and loosed upon innocent, unsuspecting, sick Montanans to perpetrate in this State the same sort of misconduct for which he was revoked, suspended, and severely disciplined in two other States. See § 37-3-101, MCA.
¶68 These are the statutorily imposed duties which the Board breached and for which it is liable-its duties under the laws enacted by the Legislature to screen applicants, to proceed through a contested case hearing, and to refuse unqualified, unprofessional, and corrupt physicians the privilege of practicing medicine in this State. Yet, it is precisely the Board’s breaches of this statutory law which this Court absolves through application of the public duty doctrine. The Court’s application of the public duty doctrine under these circumstances *227 effectively renders the provisions of Title 37, Chapter 3, MCA, unenforceable.
¶69 I detailed the legal rationale for my disagreement with this Court’s continued application of the public duty doctrine in Massee v. Thompson, 2004 MT 121, ¶¶ 65-96, 321 Mont. 210, ¶¶ 65-96, 90 P.3d 394, ¶¶ 65-96 (Nelson, J., specially concurring and dissenting), and Prosser v. Kennedy Enterprises, Inc., 2008 MT 87, ¶¶ 70-75, 342 Mont. 209, ¶¶ 70-75, 179 P.3d 1178, ¶¶ 70-75 (Nelson, J., dissenting). I am not going to explain all of those arguments again here. I suggest, though, that given the Court’s decision in this case and its apparent unalterable commitment to perpetuate the public duty doctrine, the only way the doctrine will be exterminated is through the legislative process or by way of a citizen initiative.
¶70 In the meantime, I am left to wonder how one explains to Doris Nelson the outcome of this case. On one hand, we decide that the Board violated § 37-3-321, MCA, of the medical licensing statutes, Opinion, ¶ 22, and that Doris, therefore, can sue the Board, Opinion, ¶ 31. Yet, on the other hand, we turn around and hold that while she can sue the Board, she cannot obtain a just remedy for her or her late husband’s injuries because the Board did not owe Jack a duty of care. Opinion, ¶ 51. We can explain to her that we are depriving her of her ability to obtain a remedy for the Board’s negligence and misfeasance because of the public duty doctrine. Opinion, ¶ 50. We can tell her that “ ‘[t]he public duty doctrine provides that a governmental entity [here, the State acting through the Board] cannot be held liable for an individual plaintiffs injury resulting from a governmental officer’s breach of a duty owed to the general public rather than to the individual plaintiff.’ ” Opinion, ¶ 35 (quoting Massee, ¶ 41). Hence, we can tell her that she loses because of a logical absurdity: “ ‘a duty owed to all is a duty owed to none.’ ” Opinion, ¶ 35 (quoting Nelson v. Driscoll, 1999 MT 193, ¶ 21, 295 Mont. 363, ¶ 21, 983 P.2d 972, ¶ 21). In other words, since the medical licensing laws protect “all the people of Montana,” Opinion, ¶ 49, they protect none of the people of Montana, Opinion, ¶ 35.
¶71 We also can tell Doris that the public duty doctrine is judicially created, see Massee, ¶¶ 79-87 (Nelson, J., specially concurring and dissenting), meaning that the doctrine was not enacted by any legislative process. We can tell her that the public duty doctrine is not grounded in the Montana Constitution but, rather, was created by judges who have perpetuated it for years in cases such as this. We can tell her that courts use the doctrine as a tool to shield governmental *228 entities because judges fear that if they do not do so-i.e., if they do not proactively take action to shield governmental entities-there will be a flood of lawsuits which will adversely impact the government financially. See Frank Swindell, Municipal Liability for Negligent Inspections in Sinning v. Clark-A “Hollow” Victory for the Public Duty Doctrine, 18 Campbell L. Rev. 241, 249 (1996). We can tell her that there is absolutely no evidence supporting this paranoia. No doubt she will conclude that use of the public duty doctrine is motivated by the government’s self-serving need to exonerate its own negligence and misfeasance. And she will be right. It is.
¶72 Further, we can tell Doris that notwithstanding the parade of horribles routinely thrown up in defense of the public duty doctrine, a significant number of states that have abrogated governmental tort immunity-as the Montana Constitution does at Article II, Section 18-have also rejected the public duty doctrine altogether. See Massee, ¶ 88 (Nelson, J., specially concurring and dissenting), and cases cited therein. We can tell her that this makes logical sense, because the public duty doctrine achieves the same result as governmental tort immunity — they both preclude a plaintiff from obtaining just compensation for injuries perpetrated by a negligent governmental actor. See Eugene McQuillin, The Law of Municipal Corporations vol. 18, § 53.04.25, at 197-98 (3d ed., West 2003) (“The public duty rule is not technically grounded in government immunity, though it achieves much the same results. Unlike immunity, which protects a municipality from liability for breach of an otherwise enforceable duty to the plaintiff, the public duty rule asks whether there was any enforceable duty to the plaintiff in the first place.” (footnote omitted)).
¶73 And, we can point out to Doris that Article II, Section 18 of the Montana Constitution states that governmental entities “shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature” (emphasis added). We can tell her that because the Montana Legislature has not adopted the public duty doctrine by a two-thirds vote of both houses-keep in mind that judges created this doctrine-it is clear that the doctrine is unconstitutional on its face. See Prosser, ¶¶ 73-75 (Nelson, J., dissenting).
¶74 We can also tell Doris that even the black-letter law denies this Court its continuing use of the common law public duty doctrine. Specifically, § 1-1-108, MCA, says that “[i]n this state there is no common law in any case where the law is declared by statute.” Accordingly, the Montana Constitution’s abrogation of tort immunity *229 likewise abrogates the common law public duty doctrine. See Prosser, ¶¶ 71-72 (Nelson, J., dissenting).
¶75 Yet, in the face of all this, we must also tell Doris that we will persist in applying the public duty doctrine to deny Montanans a just remedy for injuries perpetrated by governmental entities. If she concludes that our perpetuation of the public duty doctrine is little more than an exercise in legislating from the Bench, again she will be right. It is.
¶76 No doubt Doris will also conclude that she and Jack have been victimized twice by their government-once when the Board violated the law and licensed Dr. Stephenson to practice medicine, and a second time when this Court absolved this violation of the law on the basis of an antiquated legal doctrine that is anathema to common sense, logic, the law, and our Constitution. Doris will be right, again.
¶77 “The public duty doctrine frustrates the will of the people as expressed in Article II, Section 18, and this Court errs in perpetuating the doctrine’s existence 36 years after the adoption of the Constitution. It is long past time that we consign this antiquated doctrine to the dustbin of history, where it belongs.” Prosser, ¶ 75 (Nelson, J., dissenting). I simply cannot agree that a judicially created, medieval throwback to the common law can be used to deprive Doris Nelson and Jack’s estate of their right to the just remedy to which they are lawfully entitled. The Board should be held liable for its negligence and misfeasance in licensing Dr. Stephenson. The Board should be held accountable for violating the law. The King can do wrong. And in this case, the King did.
¶78 I would reverse the District Court’s decision. I dissent from our failure to do so.