JUSTICE COTTER
concurs.
¶54 I write separately to suggest that it is time to reconsider and rein in the application of the public duty doctrine.
¶55 Article II, Section 18 of the 1972 Montana Constitution provides: “The state, comities, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature.” In 1973, the Montana legislature enacted § 2-9-102, MCA, which provides: “Every governmental entity is subject to liability for its torts and those of its employees acting within the scope of their employment or duties whether arising out of a governmental or proprietary function except as specifically provided by the legislature under Article II, section 18, of The Constitution of the State of Montana.”
¶56 The legislature also defined what constituted a “claim” against a governmental entity in § 2-9-101(1), MCA, as follows:
“Claim” means any claim against a governmental entity, for money damages only, that any person is legally entitled to recover as damages because of personal injury or property damage caused by a negligent or wrongful act or omission committed by any employee of the governmental entity while acting within the scope of employment, under circumstances where the governmental entity, if a private person, would be liable to the claimant for the damages under the laws of the state.
(Emphasis added.)
¶57 After the passage of the 1972 Constitution and the foregoing laws, the Montana legislature “reinstated limited governmental tort immunity by excepting from liability certain discretionary acts of public officials and placing caps on damage awards. See Title 2, Chapter 9, Part 1, Montana Code Annotated (1977).” Massee v. Thompson, 2004 MT 121, ¶ 76, 321 Mont. 210, 90 P.3d 394 (Nelson, J., dissenting). Among the legislative exceptions was immunity for acts or omissions of legislators, including local governmental entities given *207 legislative powers by the state such as school boards. Section 2-9-lll(l)(b), MCA (1977). Subsequently, and at the urging of various county and state agencies, this Court in a series of decisions extended tort immunity to various governmental entities. Massee, ¶ 76 (Nelson, J., dissenting). As Justice Nelson observed in his Massee dissent, the 1991 legislature ultimately undertook to limit the terms under which governmental entities enjoyed statutory immunity by amending § 2-9-111, MCA, so as to preclude legislative immunity in those instances where administrative actions are undertaken in the execution of a law or public policy. See generally, Justice Nelson dissent in Massee, ¶¶ 67-96, addressing sovereign immunity, legislative action, and the development of the public duty doctrine.
¶58 As observed by Justice Nelson, the public duty doctrine can trace its inception in this state to Annala v. McLeod, 122 Mont. 498, 504, 206 P.2d 811, 814-15 (1949), in which the Court concluded that the Sheriff would not be held liable for damages sustained to a homeowner’s property during a riot. In doing so, the court followed the precepts set forth in South v. Maryland, 59 U.S. 396, 15 L. Ed. 433 (1856), in which the Supreme Court concluded that the duty of a sheriff to keep the peace is a public duty which would be punishable only by indictment. South, 59 U.S. at 403. (Massee, ¶ 80.) Subsequently, we decided Phillips v. Billings, 233 Mont. 249, 253, 758 P.2d 772, 775, (1988), in which we concluded that the general duty of a police officer to protect the public “does not give rise to liability for a particular individual’s injury absent a greater duty imposed by a special relationship.”
¶59 The foregoing cases did not reference the term “public duty doctrine”; however, they clearly laid the groundwork for its adoption in Montana. Montana first formally recognized the “public duty doctrine” in Nelson v. Driscoll, 1999 MT 193, 295 Mont. 363, 983 P.2d 972. In Nelson, we addressed the duty of care owed by a police officer to an intoxicated woman whom he stopped for DUI but then released with instructions that she not drive home. Subsequently, while walking along the icy shoulder of a roadway, she was struck and killed by a motorist. Citing Phillips, this Court for the first time addressed the “public duty doctrine” and the exceptions to the doctrine that survive in our case law to this day. Notably for purposes of this discussion, in identifying the four circumstances that would establish a special relationship so as to take the case outside of the doctrine, we said, quoting Phillips: “An exception to the public duty doctrine arises when there exists a special relationship between the police officer and an individual giving rise to [sic] special duty that is more particular than *208 the duty owed to the public at large.” Nelson, ¶ 22 (emphasis added).
¶60 In addressing the public duty doctrine and the four exceptions thereto, we cited the histoiy of the doctrine, quoting Phillips for the proposition that “a police officer has no duty to protect a particular individual absent a special relationship.” Nelson, ¶ 21. We cited cases from other jurisdictions and treatises which expressed the polity that “a police officer’s duty to protect and preserve the peace is owed to the public at large and not to individual members of the public.” Nelson, ¶ 21 (citations omitted). Thus, when we adopted the “public duty doctrine” we did so in the limited context of its application to law enforcement officers. It was a “special relationship” between a police officer and a member of the public that invited liability exceptions under particular circumstances, and not a “general” relationship between a government bureaucrat and a member of the public.
¶61 Since Nelson, we have referenced the doctrine frequently in cases involving the interaction of law enforcement officers and particular plaintiffs. See, e.g., Massee, Nelson v. State, 2008 MT 336, 346 Mont. 206, 195 P.3d 293, and Gonzalez v. City of Bozeman, 2009 MT 277, 352 Mont. 145, 217 P.3d 487. Where we have gone wrong, I submit, is in expanding the sweep of the public duty doctrine to encompass all manner of general government conduct.
¶62 In joining Justice Regnier’s special concurring opinion in Massee, I signaled my agreement with Justice Nelson’s analysis and conclusion that it is difficult to sustain the public duty doctrine in light of Article II, section 18 of the Montana Constitution, which abolished sovereign immunity. However, I agreed with Justice Regnier’s observation that the doctrine might arguably be preserved in the context of the exercise of discretion by law enforcement officers. However, we left that discussion to “another day,” as the abolishment of the doctrine was not critical to the outcome of the Massee case. Massee, ¶ 100.
¶63 Here, the plaintiff has not advocated for the partial or complete abolishment of the public duty doctrine. I therefore write separately in the hopes that “another day” will come soon. As the argument and citations contained in Justice Baker’s dissent underscore, the public duty doctrine has morphed from a doctrine bom and intended to apply only to the actions and decisions of law enforcement, into one that is applied to a broad swath of governmental actions and omissions. In our zeal to protect governments from negligence liability, we have expanded the doctrine well beyond its intended limitations, and in so doing have ignored not only Article H, section 18, but also the clear language of §§ 2-9-101 and -102, MCA, which hold every governmental *209 entity subject to liability for torts under circumstances in which that entity, if a private person, would be liable to the claimant for damages. We have also ignored that provision of § 2-9-102, MCA, which directs that any exception to the foregoing rule must be approved by the legislature by a 2/3 vote of each house. Because the legislature has largely eliminated and declined to statutorily resurrect governmental immunity for torts, I believe we have erredin expansively reviving that immuniiy by resort to a judicially-created theory. For these reasons, I for one would welcome in a future case a thorough re-examination and review of the viability of the public duty doctrine.
JUSTICE WHEAT joins the concurrence.