Justice Beth Baker, concurring.
¶ 32 I have joined the Court's Opinion and write with additional observations on our consideration of public policy. The Court observes that this case marks the first time we have been asked to determine whether a law enforcement officer owes a duty of care to a plaintiff alleging injury directly from an officer's "negligent affirmative acts." Opinion, ¶ 19. Before imposing a common-law duty for the first time, we consider both "whether the imposition of that duty comports with public policy, and whether the defendant could have foreseen that his conduct could have resulted in an injury to the plaintiff." Opinion, ¶ 23 (quoting Fisher , ¶ 17 ). Our analysis "includes determining the moral blame attached to the defendant's conduct, the prevention of future harm, the extent of the burden imposed, the consequence to the public of imposing [a] duty, and the availability and cost of insurance."
***325 Gatlin-Johnson , ¶ 13 (citing Fisher , ¶ 28 ). Because the existence of a common-law duty is determined by the Court, we have considered these factors consistently in cases questioning whether such a duty arises-including cases filed against both private parties and government entities and actors. Gatlin-Johnson, ¶ 22 ; Fisher , ¶ 28 ; Prindel v. Ravalli Cnty. , 2006 MT 62, ¶ 37, 331 Mont. 338, 133 P.3d 165 ; Henricksen v. State , 2004 MT 20, ¶ 21, 319 Mont. 307, 84 P.3d 38 ; Jackson v. Dep't of Fam. Servs. , 1998 MT 46, ¶ 39, 287 Mont. 473, 956 P.2d 35 ; Singleton v. L.P. Anderson Supply Co. , 284 Mont. 40, 44-45, 943 P.2d 968, 971 (1997) ;
*312 Estate of Strever v. Cline , 278 Mont. 165, 173, 924 P.2d 666, 670 (1996) ; Phillips v. City of Billings , 233 Mont. 249, 253, 758 P.2d 772, 775 (1988).
¶ 33 The Court today relies on §§ 27-1-701 and 28-1-201, MCA, to determine that the Legislature has established the public policy to avoid injury to others, and the Opinion emphasizes-consistent with those statutes-that an officer's duty in the circumstances giving rise to the certified question is to exercise ordinary care or skill. Opinion, ¶ 24. Ordinary care, in turn, will be measured by the standard that a reasonable officer with similar skill, training, and experience would follow under the same or similar circumstances. Opinion, ¶¶ 2, 19, 29-31.
¶ 34 Because of its reliance on the statutes generally governing the duty of ordinary care, the Court does not separately examine the public policy considerations our cases have employed to determine whether a duty of care arises in a particular circumstance. It bears noting that our Opinion today imposes a common-law duty of negligence; it does not hold that an officer owes a statutory duty. We have not before relied exclusively on the general ordinary care statutes when determining whether a common-law duty exists in a given situation. To my knowledge, the only cases in which we have held the public policy consideration satisfied by legislative expression involved statutes that impose specific duties of care applicable to the circumstances of the case. E.g. , Fisher , ¶¶ 18-19, 28-29 (holding that several statutes within the motor vehicle code imposed specific duties of care for motor vehicle operators); Prindel , ¶ 29 (holding that specific statutes requiring a detention center to receive and confine a prisoner imposed a duty on the county to a plaintiff injured by a committed offender). In Prindel , even though we recognized a statutory duty of care, we considered the public policy factors when determining whether a common-law duty existed. Prindel , ¶ 37.
¶ 35 Although the Court does not separately examine these public ***326 policy considerations firmly established in our precedent, it does not overrule any prior decisions and reaffirms that public policy is part of the analysis in deciding whether to impose a common-law duty. Opinion, ¶¶ 10, 23. I do not read today's Opinion to suggest that §§ 27-1-701 and 28-1-201, MCA, require the imposition of a new common-law duty any time a person is injured by the acts of another. In the context of the circumstances of this case and the Opinion's thorough consideration of the responsibilities of law enforcement officers, our traditional public policy considerations support the imposition of a duty here.
¶ 36 Our precedent recognizes the moral blame that reasonably attaches where a person's conduct causes or allows serious injury. Gatlin-Johnson , ¶ 22 ; Henricksen , ¶ 24 ; Estate of Strever , 278 Mont. at 173, 924 P.2d at 670. A law enforcement officer's job is fraught with risk and danger, and the officer has powerful tools at her disposal. Failure to exercise that level of care and skill to which officers are trained-particularly when encountering members of the public in a volatile situation-quickly can lead to serious injury or death. And the desire to prevent future harm is compelling. There is near-daily news of law enforcement officers involved in confrontation and conflict; public interest in the safety of both officers and the people they encounter in their work is strong.
¶ 37 The third and fourth considerations tend to go hand in hand when public entities are involved. The extent of burden to the defendant and the consequences to the community of holding the public duty doctrine inapplicable here are important considerations. The community bears a cost either way: if a duty is imposed for a law enforcement officer's affirmative acts, the potential liability for breach ultimately falls on the taxpayers; but if a duty is not imposed, the community suffers from the potential that officers will not think through the consequences of their actions and from deterioration in public trust of law enforcement generally. The burden that will fall on the defendant by imposing a duty in the circumstances presented also brings potential to cut both ways. On one hand, the burden is not substantial when considered in light of the Court's ruling that the duty imposed is cabined by the standard of care to which a reasonable officer would be held in similar circumstances. Incorporating the standard of care will ensure that officers *313 are held only to the standards they are trained to meet and that the fact-finder will consider the inherent risk of injury when determining whether an officer's affirmative acts constitute a breach of that legal duty. On the other hand, whether or not they ultimately are determined to be liable, law enforcement officers will be burdened ***327 by more litigation and court appearances to defend their actions. And the governments that employ them-and consequently, again, taxpayers-will assume the burden of defending those lawsuits and hiring experts to demonstrate that their officers exercised reasonable care in carrying out their duties.
¶ 38 The burden on government employers overlaps with the final consideration of insurance. We have recognized that public officers and entities are insured under state law. See Gatlin-Johnson , ¶ 22, Henricksen , ¶ 24. The public, of course, ultimately bears the cost of that insurance. But, as long as the officer is acting within the course and scope of employment and meets other requirements of law, she will not bear personal liability. See § 2-9-305, MCA.
¶ 39 On balance, the strong interests in safety, public trust in government, and accountability of public officers weigh in favor of concluding that public policy supports imposition of the duty the Court recognizes in this case.
Justice Jim Rice and District Court Judge Nickolas Murnion join in the Concurrence of Justice Beth Baker.